SCHMITT *v.* COMMON COUNCIL OF VILLAGE OF CLINTON.

LIQUOR BONDS—APPROVAL—SURETY COMPANIES.

Act No. 266, Pub. Acts 1895, declaring that any bond required by law to be given with surety or sureties may be executed by a surety company, and that such execution shall be in all respects a full and complete compliance with every requirement as to the execution of such bond by sureties, and that in those cases where, by the laws of the State, more than one surety is required, it shall be lawful to approve and accept a bond with but one surety, provided the surety is a corporation duly qualified, and that the certificate of the insurance commissioner shall be conclusive proof of the solvency and credit of such company for all purposes, and of its right to be accepted as sole surety, and of its sufficiency as such, does not operate to compel those charged with the duty of accepting and approving bonds of saloon keepers under Act No. 313, Pub. Acts 1887, to accept a bond with a foreign corporation as sole surety, where their refusal is based on an honest doubt as to the sufficiency of the surety proposed.    -

*Certiorari* to Lenawee; Lane, J.   Submitted July 21, 1896.   Decided December 9, 1896.

*Mandamus* by Christopher Schmitt and another to compel the common council of the village of Clinton to accept their liquor bond with a foreign corporation as sole surety. From an order granting the writ, respondent brings *certiorari*. Reversed.

*Brennan, Donnelly & Van De Mark,* for relators.

*John E. Bird,* for respondent.

MONTGOMERY, J. The relators presented to the respondent a bond in the form required to be given by saloon keepers by Act No. 313, Pub. Acts 1887, except that it was executed by themselves as principals and the Fidelity & Deposit Company, of Baltimore, Md., as sole surety. The council refused to accept the bond, whereupon the relators filed a petition in the circuit court for the county of Lenawee, praying *mandamus* to compel the council to accept the bond filed. The petition for the *mandamus*, addressed to the circuit court, alleged that the respondent refused to approve the bond, without giving any *valid* reason therefor. It is not alleged whether any reason was given and entered of record, and, if so, what reason. It is further alleged in the petition that the council acted arbitrarily in the matter, and has no valid reason for its refusal to approve the bond. The answer denies that the council acted without any valid reason, denies that it acted arbitrarily in the matter, and denies that it had no valid reason for disapproving the bond; and the respondent shows that the bond was disapproved because the surety was a foreign corporation, and that it had no knowledge of said corporation, and that, with its limited means for investigation of the financial condition of said surety, it could learn little or nothing concerning it; that it therefore decided, in its judgment, that said surety was not a sufficient surety, and that it was not in the interest of the public safety to approve the bond, and that it was advised that it was not obliged to accept said bond unless it was satisfied that said surety was sufficient. The circuit judge

granted the *mandamus* as prayed, and the respondent seeks to have this order reviewed.

The authority upon which the circuit judge proceeded was Act No. 266 of the Public Acts of 1895, entitled—

"An act relative to bonds and other obligations with surety or sureties, and the acceptance as surety thereon of companies qualified to act as such, and the release of such surety, and the safe depositing of assets for which such surety may be liable, and to the charging by fiduciaries of the expense of procuring sureties, and repealing all laws in conflict therewith."

Section 1 of the act provides as follows:

"Whenever any bond, undertaking, recognizance, or other obligation is by the law of the State, or by the charter, ordinances, rules, or regulations of any municipality, board, body, organization, or public officer, or in any judicial or other proceeding, required or permitted to be made, given, tendered, or filed with surety or sureties, and whenever the performance of any act, duty, or obligation, or the refraining from any act, is required or permitted to be guaranteed, such bond, undertaking, obligation, recognizance, or guarantee may be executed by a surety company qualified to act as surety or guarantor, as hereinafter provided, and such execution by such company of such bond, undertaking, recognizance, obligation, or guarantee shall be in all respects a full and complete compliance with every requirement of every law, charter, ordinance, rule, regulation, or order that such bond, undertaking, obligation, recognizance, or guarantee shall be executed by one surety, or by one or more sureties, or that such sureties shall be residents or householders or freeholders, or either or both, or possess any other qualification."

Section 2 is as follows:

"In any cause, matter, or proceeding where, by the laws of this State, the giving of any bond is required or permitted, and more than one surety is required, it shall be lawful for the court, officer, or person who is authorized or required by law to approve and accept such bond, to accept and approve a bond with but one surety, provided the surety thereto is a corporation qualified to act as surety or guarantor as hereinafter provided."

Section 4 provides for the issuing of a certificate by the insurance commissioner upon certain proof being adduced before him, "which said certificate shall be conclusive proof of the solvency and credit of such company for all purposes, and of its right to be so accepted as such sole surety, and its sufficiency as such."

In my opinion, the language of the act as a whole is not such as to evidence an intent that those charged with the duty of accepting and approving bonds under Act No. 313, Pub. Acts 1887, are bound to accept such a bond. Section 1 was evidently designed to permit the substitution of one surety, in case it should be a corporation organized under the act, in place of two, required by other provisions of the law; and, where no act of acceptance is required, but the giving of such bond is required by law, such bond, as executed, is declared sufficient. It is true that by the provisions of section 4 the certificate of the commissioner is made conclusive proof of the solvency and credit of such company for all purposes, and of its right to be so accepted as sole surety, and its sufficiency as such. While this language is broad, it must be construed in connection with other provisions of the statute, and, so construed, we think it does not preclude the board or officer from exercising a discretion. We think this means no more than that the company is authorized, by reason of compliance with the statute, to become sole surety. Recurring to section 2, we find the provisions of the section permissive merely. It is there enacted that it shall be lawful for the court, officer, or person who is authorized or required by law to approve such bond, to accept and approve a bond with but one surety. It is obviously absurd to require a board or officer to *approve* a bond which it is *bound* to accept. It is a mere idle ceremony. These views are reinforced by the consideration that, if the construction contended for by relators should prevail, a court or officer would be bound to accept a bond signed by such surety, without regard to the amount involved in the undertaking, and

even if such bond be in a penalty many times the capital stock of the corporation, as might occur in the case of the state treasurer's bond, or in the case of a bond required of a receiver, and this also without regard to the amount of liability which such company may have previously incurred on other bonds or undertakings.  We think it should be held that it was not the intention to make the receipt of such bond by officers compulsory, and that, as the return does not show that the respondent acted captiously, and as there is no averment that it failed to state its reasons upon the record, the writ of *mandamus* should have been denied.

The order will be reversed, with costs.

LONG, C. J., HOOKER and MOORE, JJ., concurred with MONTGOMERY, J.

GRANT, J.  Under the police power inherent in the legislature, Act No. 313, Pub. Acts 1887, was passed.  It was a general act, covering the entire business of the liquor traffic in Michigan, and providing the conditions under which it might be carried on.  Under that act the saloon keepers are required to give a bond, signed by two sureties, in the sum of not less than $3,000 nor more than $6,000.  The sufficiency of the bond is to be determined by the township board, board of trustees, or common council of townships, villages, and cities.  The bondsmen are required to be male residents and freeholders, residing within the corporate limits of the municipality, and possessed of the requisite real estate, situated in the county, and required to justify thereto.  That law expressly provides that the bond shall not be received by the county treasurer without the approval of the board or council.  In 1895 the legislature passed Act No. 266, Pub. Acts 1895.  The title, and sections 1, 2, and 4, are quoted in the opinion of Mr. Justice MONTGOMERY.  The other provisions of the act are not essential to a decision of the point raised.  The relators have been saloon keepers in the village of Clinton.  They presented to the common

council of that village a bond executed by themselves as principals, and the Fidelity & Deposit Company, of Baltimore, Md., as sole surety. The council refused to accept the bond, whereupon the relators filed a petition in the circuit court for the county of Lenawee for a *mandamus* compelling the acceptance of the bond, which was granted by the circuit court, and the respondent appeals.

The title to this act contains nothing to indicate any purpose to supplant or annul the provisions of the law of 1887, or to compel courts and officers in criminal cases to accept recognizances signed by those charged with crime. It is, however, insisted on behalf of the relators that the title is a general one in reference to bonds and other obligations, and that, therefore, it covers these extraordinary provisions. We cannot so hold. While it may not be strictly true to say that the act of 1895 repeals the above provisions of the act of 1887, and the provisions of many other acts, still the effect is to annul them, and render them of no force or effect, at the option of any person desiring to give a bond under the liquor statute, or a recognizance in a criminal case. Repeals by implication are not favored, and there is nothing in the innocent title of this act to show any intent to render these provisions nugatory, or to deprive the local authorities of the right to perform the duties imposed upon them by the liquor statute under the police power. The judgment of one man—the insurance commissioner—is by this act substituted for the judgment of the local authorities, to whom the laws of this State have uniformly given control in such matters, and of courts and officers in criminal cases. The object of a recognizance in a criminal case is not to obtain the amount of the money nominated in the bond, but to secure the attendance of the accused at the trial. The theory is that persons in his vicinity, acquainted with the accused, having some confidence in his innocence, and believing that he will appear for trial, are willing to enter into a recognizance for his appearance in court. The bondsman who is secured by

depositing with him the amount of the recognizance to satisfy the amount in case of default has no interest in producing the accused for trial. It is, in my judgment, contrary to public policy to permit a corporation for hire to become surety on criminal recognizances. Yet the logic of relators' contention is that courts and officers are deprived of their discretion in the matter, and are bound to accept as sole surety a foreign corporation which is authorized to do business in this State. The title to the act is not, in my judgment, broad enough to include such sweeping changes in the law, and to set aside a policy which has been pursued in this State for so long a time.

The judgment of the court below should be reversed, and the writ dismissed, with costs of both courts to the respondent.